# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

No. 24-10600

RLI INSURANCE COMPANY,

Appellant,

v.

JOHN LEHMAN, et al.

Appellees.

---

## APPELLANT'S OPENING BRIEF

---

On Appeal from the
United States District Court for the Middle District of Florida
No. 5:22-cv-00478-JSM-PRL

BUTLER WEIHMULLER KATZ CRAIG
FAY E. RYAN, ESQ.
Florida Bar No. 0965944
fryan@butler.legal
ADAM M. TOPEL, ESQ.
Florida Bar No. 113916
atopel@butler.legal
400 North Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone: (813) 281-1900
Facsimile: (813) 281-0900

*Counsel for Appellant, RLI Insurance Company*

## CERTIFICATE OF INTERESTED PERSONS

Appellant, RLI Insurance Company, pursuant to Federal Rules of Appellate Procedure 26.1 and 28(a)(1) and Eleventh Circuit Rules 26.1-1, 26.1-2, 26.1-3, and 28-1(b), submits this certificate of interested persons. The following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal:

1. Butler Weihmuller Katz Craig, LLP, Counsel for Appellant

2. Lammens, Judge Philip R., United States Magistrate Judge, Middle District of Florida, Tampa Division

3. Lehman, Alicia, Appellee

4. Lehman, John, Appellee

5. Moody, Judge James S., Jr., United States District Judge, Middle District of Florida, Tampa Division

6. RLI Insurance Company, Appellant

7. Russo, Andrew F., Esq., Counsel for Appellee

8. Ryan, Fay E., Esq., Counsel for Appellant

9. Rywant, Alvarez, Jones, Russo & Guyton, P.A., Counsel for Appellee

10. Topel, Adam M., Esq., Counsel for Appellant

**CORPORATE DISCLOSURE STATEMENT**

Appellant, RLI Insurance Company, pursuant to Eleventh Circuit Rule 26.1-1, submits the following corporate disclosure statement. RLI Insurance Company is a wholly owned subsidiary of RLI Corporation. RLI Corporation is listed and principally traded on the New York Stock Exchange, under trading symbol "RLI." No publicly held corporation owns 10% or more of RLI Corporation's stock.

# STATEMENT REGARDING ORAL ARGUMENT

Appellant, RLI Insurance Company, pursuant to Eleventh Circuit Rule 28-1(c), submits this statement regarding oral argument. RLI respectfully requests that the Court set oral argument in this matter, as RLI believes that it would help clarify the record and would assist the Court in resolving the issues raised on appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .................................... C-1

CORPORATE DISCLOSURE STATEMENT ...................................... C-2

STATEMENT REGARDING ORAL ARGUMENT .................................. i

TABLE OF CONTENTS ............................................................... ii

TABLE OF CITATIONS ............................................................. iv

STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION ....................................................................... vi

STATEMENT OF THE ISSUES ...................................................... 1

STATEMENT OF THE CASE ......................................................... 2

    I.     Nature of the Case ......................................................... 2

    II.    The Car Accident ........................................................... 2

    III.   The Lehmans' Personal Umbrella Insurance Policy with RLI ...................................................................... 2

    IV.   Lehman's Primary Insurance Policies ................................... 5

    V.    The Primary Insurers' Coverage Positions ............................ 7

    VI.   RLI's Declaratory-Judgment Action Against the Lehmans ...................................................................... 7

    VII.   Initial Summary-Judgment Proceedings ............................... 8

    VIII. The Lehmans' Unallocated Settlement Agreement with Philadelphia ......................................................... 10

    IX.   RLI's Response to the District Court's Summary-Judgment/Show-Cause Order .............................................. 11

    X.    The District Court's Entry of Final Summary Judgment in Favor of the Lehmans ...................................... 12

STATEMENT OF THE STANDARD OR SCOPE OF REVIEW ............ 13

SUMMARY OF THE ARGUMENT ....................................................... 14

ARGUMENT ........................................................................................... 16

    I.    The District Court Erred by Entering Summary Judgment, *Sua Sponte*, in Favor of the Lehmans ............... 16

        A.    The Lehmans Aren't Entitled to UM Coverage Under the RLI Umbrella Policy, as They Failed to Exhaust the Limits of their Underlying Basic UM Policies .......................................................................... 16

        B.    The Lehmans' Settlement Agreement with Philadelphia Did Not Allocate the Settlement Payment Among Claims, so the Lehmans Cannot Show that Philadelphia's $50,001 Payment Was for UM Coverage ........................................................ 20

        C.    The Lehmans Failed to Maintain the Required Underlying UM Coverage, for Each Auto they Operated, that Followed Them Everywhere ............... 23

CONCLUSION ....................................................................................... 26

CERTIFICATE OF COMPLIANCE ...................................................... 27

CERTIFICATE OF SERVICE ................................................................ 27

# TABLE OF CITATIONS

**Cases**

*Chicago Ins. Co. v. Dominguez,*
420 So. 2d 882 (Fla. Dist. Ct. App. 1982)......................................16

*Dionese v. City of W. Palm Beach,*
500 So. 2d 1347 (Fla. 1987) .....................................................21, 22

*Emp'rs Ins. of Wausau v. Granite State Ins. Co.,*
330 F.3d 1214 (9th Cir. 2003) .........................................................17

*Liberty Mut. Ins. Co. v. Wolfson,*
299 So. 3d 28 (Fla. Dist. Ct. App. 2020)...................................21, 22

*O'Reilly Auto Enters., LLC v. U.S. Fire Ins. Co.,*
No. 6:17-03007-CV-RK, 2020 WL 520129 (W.D. Mo. Jan. 31,
2020) ................................................................................................17

*Olympic Ins. Co. v. Emp'rs Surplus Lines Ins. Co.,*
178 Cal. Rptr. 908 (Cal. Ct. App. 1981) .........................................17

*Publix Super Markets, Inc., v. Fireman's Fund Ins. Co.,*
No. 8:22-CV-2569-CEH-AEP, 2023 WL 6049680 (M.D. Fla.
Sept. 15, 2023) ................................................................................16

*Stanley v. City of Sanford, Fla.,*
83 F.4th 1333 (11th Cir. 2023) .......................................................13

*Trovillion Constr. & Dev., Inc. v. Mid-Continent Cas. Co.,*
No. 6:12-CV-914-ORL-37, 2014 WL 201678 (M.D. Fla. Jan.
17, 2014) ..........................................................................................20

*United Educators Ins. v. Everest Indem. Ins. Co.,*
372 F. App'x 928 (11th Cir. 2010) ..................................................16

## Statutes

28 U.S.C. § 1291 ...................................................................vi

28 U.S.C. § 1332(a) ..............................................................vi

## Rules

Fed. R. Civ. P. 56(a)............................................................ 13

Fed. R. Civ. P. 56(f)(1) ........................................................ 12

## Other Authorities

15A Jordan R. Plitt, et al., *Couch on Insurance* § 220:39 (3d ed.) ... 17, 18

## STATEMENT OF SUBJECT-MATTER AND
## APPELLATE JURISDICTION

The district court had federal subject-matter jurisdiction over this case, as the parties to the final judgment were citizens of different states, and the amount in controversy exceeded $75,000. 28 U.S.C. § 1332(a). This Court has appellate jurisdiction, as this is an appeal of a final summary judgment. 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUES

I.    Whether the district court erred by entering summary judgment, *sua sponte*, in favor of the appellees, concluding, as a matter of law, that they maintained and exhausted the requisite amount of underlying uninsured motorist (UM) insurance to trigger excess UM coverage under their RLI personal umbrella policy.

# STATEMENT OF THE CASE

## I.    Nature of the Case

RLI Insurance Corporation appeals a final summary judgment entered, *sua sponte*, in favor John and Alicia Lehman, on RLI's complaint for declaratory relief.

## II.    The Car Accident

On April 12, 2022, John Lehman was involved in a car accident in Citrus County, Florida while driving his Dodge Ram truck.  (D.E. 1 at 2; D.E. 6-1 at 65; D.E. 22 at 1.)  Alicia Lehman was Lehman's spouse at the time of the accident.  (D.E. 1 at 2; D.E. 22 at 1.)

## III.    The Lehmans' Personal Umbrella Insurance Policy with RLI

RLI issued personal umbrella liability insurance policy no. PUP1322740 to the Lehmans, effective for the coverage period of February 22, 2022, to February 22, 2023. (D.E. 1 at 2; D.E. 1-1 at 2; D.E. 22 at 2.)  The policy provided various types of excess insurance coverage, subject to conditions, limitations, and exclusions.  (D.E. 1-1 at 2–3.)  The policy's Declarations identified the named insured as John Lehman. (D.E. 1 at 2; D.E. 1-1 at 2; D.E. 22 at 2.)  The policy's general provisions stated that "the words you, your, or yours mean the person named in the

Declarations as the Named Insured and his or her **Spouse** who lives in the same household." (D.E. 1 at 4; D.E. 1-1 at 4; D.E. 22 at 2.)

The RLI Policy contained an Excess UM Endorsement, which provided excess UM coverage on the condition that the Lehmans maintain a certain minimum level of underlying UM coverage and also exhaust the full limits of their underlying UM policies:

> We will pay those sums which you or any person covered by this policy is legally entitled to recover as damages from an uninsured or underinsured motorist because of **Bodily Injury** to which this insurance applies, caused by an **Accident** and in excess of all **Underlying Insurance** up to and not to exceed the Excess Uninsured/Underinsured Motorists Limit of Coverage shown on the Declarations. We will pay only in excess of the Uninsured/Underinsured Motorist Coverage required to be maintained under the Required **Basic Policies** as set forth in the Declarations. . . .
>
> This insurance applies only if:
>
> a.   The policy limits of any and all **Underlying Insurance** have been exhausted by payment of judgments or settlements.
>
> b.   You and your **Relatives** maintain Uninsured Motorist Coverage and Underinsured Motorist Coverage at limits equal to or greater than the Minimum Limits of Coverage as shown in the **Required Basic Policies** section of the Declarations

for such coverages. Failure to maintain the applicable Minimum Limit of Coverage as shown in the Required **Basic Policies** section of the Declarations for Uninsured/Underinsured Motorists eliminates coverage under this Excess Uninsured/Underinsured Motorist Coverage.

. . . .

**Underlying Insurance** means the Required Basic Uninsured/Underinsured Policy as shown in the Declarations and any other applicable liability, uninsured and/or underinsured motorist coverage, and any bond.

(D.E. 1 at 4–5; D.E. 1-1 at 15–16; D.E. 22 at 2.)

The RLI Policy's Declarations stated the amount of minimum underlying UM insurance that the Lehmans were required to maintain for each auto they operated:

**REQUIRED BASIC POLICIES**

It is agreed by you that you and any Relative will be covered by an Automobile liability policy for any Automobile you operate or your Relative operates for at least the minimum limits listed below. It is also agreed by you that you and any Relative will be covered by a personal liability policy for at least the minimum limits listed below. If you or your Relatives are not covered under your policies for at least the minimum limits listed below, they must be covered under another Automobile liability policy and another personal liability policy for at least the minimum limits below. . . .

4

| Basic Policy | Minimum Limit of Coverage | | |
|---|---|---|---|
| A.  Automobile Liability | Bodily Injury | $  250,000 | each person |
| | | $  500,000 | each occurrence |
| | Property Damage | $    50,000 | each occurrence |
| | | or | |
| | Bodily Injury | $  300,000 | each person |
| | | $  300,000 | each occurrence |
| | Property Damage | $    50,000 | each occurrence |
| | | or | |
| | Bodily Injury and Property Damage | | |
| | Combined Single Limit | $  300,000 | each occurrence |

. . . .

| Basic Policy | Minimum Limit of Coverage | | |
|---|---|---|---|
| B.  Uninsured/Underinsured Motorists | Bodily Injury | $  250,000 | each person |
| | | $  500,000 | each occurrence |
| | Property Damage | $       N/A | each occurrence |
| | | or | |
| | Bodily Injury | $  300,000 | each person |
| | | $  300,000 | each occurrence |
| | Property Damage | $       N/A | each occurrence |
| | | or | |
| | Bodily Injury and Property Damage | | |
| | Combined Single Limit | $  300,000 | each occurrence |

(D.E. 1 at 2–4; D.E. 1-1 at 2–3; D.E. 22 at 2.)  The Lehmans were required to maintain underlying UM coverage at minimum limits of $250,000 per person and $500,000 per occurrence.  (D.E. 1-1 at 3.)

## IV.    Lehman's Primary Insurance Policies

At the time of the accident, Lehman held an auto insurance policy with Mapfre Insurance Company, which carried "stacked" UM coverage with maximum limits of $100,000 per person and $300,000 per occurrence, multiplied by two insured vehicles, for a total of $200,000. (D.E. 1 at 5; D.E. 6-1 at 157; D.E. 22 at 2.)  The Dodge Ram truck that Lehman was driving at the time of the subject accident was a covered auto under Mapfre's policy.  (D.E. 6-1 at 65, 157.)

Lehman also held a "Collector Vehicle Insurance Policy" with Philadelphia Indemnity Insurance Company, which carried "non-stacked" UM coverage, with a combined single limit of $500,000. (D.E. 1 at 5; D.E. 6-1 at 23; D.E. 22 at 2.) The Philadelphia Policy's UM coverage applied only to accidents that occurred while the insured occupied an auto insured on the policy. (D.E. 6-1 at 32; D.E. 6-1 at 65.) The Philadelphia Policy stated:

> **A.** It is agreed and understood that the definition of ["]Your covered auto" is deleted and replaced by the following:
>
> "Your covered auto" means:
>
> **1.** Any "collector vehicle" shown in the Declarations.
> **2.** Any "newly acquired auto" that meets the definition of a "collector vehicle".
>
> **B.** It is agreed and understood that the following definition is added to the policy:
>
> "Collector vehicle" means a private passenger auto or motorcycle that:
>
> **1.** Is maintained solely for use in exhibitions, parades, club activities, or other functions of public interest.
> **2.** Is not used for regular driving to work, school, errands, shopping, general transportation, secondary or back-up transportation, business or commercial

> purposes, except for limited pleasure
> use.

(D.E. 6-1 at 40.) Lehman's Dodge Ram truck was not a "collector vehicle" shown on the Declarations of the Philadelphia Policy. (D.E. 6-1 at 23–24.)

## V. The Primary Insurers' Coverage Positions

Mapfre agreed to provide coverage to Lehman for the car accident under its policy, as he was occupying a covered auto when the accident occurred. (D.E. 31-1 at 61–62.) Mapfre tendered its full, stacked policy limit of $200,000. (D.E. 31-1 at 61–62.)

By letter dated August 3, 2022, Philadelphia denied UM benefits to Lehman for the accident, as its collector policy did not provide UM coverage for accidents that occurred while he was injured in his Dodge Ram truck, a vehicle owned by him but not insured on the collector policy. (D.E. 1 at 5–6; D.E. 6-1 at 65; D.E. 22 at 2; D.E. 31-2 at 3.)

## VI. RLI's Declaratory-Judgment Action Against the Lehmans

On October 12, 2022, RLI filed this declaratory-judgment action against the Lehmans. (*See* D.E. 1 at 1.) RLI sought declaration that it owed no excess UM coverage to them in connection with the car accident, as the "RLI Policy's excess UM coverage does not apply when the required

'**Basic Policy**' limits have not been exhausted by payment of judgment or settlement." (D.E. 1 at 6.)

## VII. Initial Summary-Judgment Proceedings

On October 10, 2023, RLI filed a Motion for Summary Judgment, explaining that RLI owed the Lehmans no excess UM coverage under the umbrella policy, as there was no genuine dispute that the Lehmans failed to exhaust their underlying UM limits. (D.E. 31 at 7–9.) "Because Mr. Lehman did not exhaust the policy limits for UM coverage on the Philadelphia policy," RLI explained, "there is no excess UM coverage available to him for this accident under the RLI PUP." (D.E. 31 at 8.)

On November 20, 2023, the Lehmans filed a response in opposition to RLI's Motion for Summary Judgment. (D.E. 38 at 1.) In their response, the Lehmans alleged that they had recently settled their claim with Philadelphia for $50,001, so in their view, they had now satisfied the RLI Policy's exhaustion requirement. (D.E. 38 at 1–5.) Lehman submitted a summary-judgment affidavit, claiming that Philadelphia "reversed its coverage position and offered $50,001 to settle my uninsured motorist claim against Philadelphia which I have accepted." (D.E. 39-1 at 2.) The Lehmans argued that RLI's Motion for Summary

Judgment should be denied, and they further requested "entry of an order declaring that the Lehmans are entitled to RLI's Excess Underinsured Motorist Benefits in the amount of $1,000,000 as provided to the Lehmans under their policy with RLI." (D.E. 38 at 24.) The Lehmans never filed a cross-motion for summary judgment against RLI, nor had they filed any counterclaim for affirmative declaratory relief. (*See* D.E. 22 at 1–4.)

On January 4, 2024, the district court issued an order denying RLI's Motion for Summary Judgment. (D.E. 46 at 1.) The court stated that "Defendants' response, which is supported by Lehman's Affidavit, points out that during the pendency of this action, Philadelphia agreed to tender $50,001 in order to settle Lehman's underlying breach of contract claim against Philadelphia." (D.E. 46 at 3.) The district court stated that "the record reflects that the underlying insurance coverage was exhausted. Accordingly, RLI's obligations under the excess policy are triggered." (D.E. 46 at 4.) The district court also expressed a belief that "Defendants are entitled to judgment in their favor because they prevailed in this lawsuit." (D.E. 46 at 5.) The court stated it would give RLI fourteen days

"to file a motion explaining why the Court should not enter final judgment in Defendants' favor." (D.E. 46 at 5.)

## VIII. The Lehmans' Unallocated Settlement Agreement with Philadelphia

Two days later, on January 6, 2024, the Lehmans executed a settlement agreement and release in favor of Philadelphia and insurance agent Grundy Worldwide. (D.E. 50-2 at 1, 2, 7, 8.) The settlement agreement involved more than just the Lehmans' UM claim—it encompassed claims against the releasees for personal injuries, property damage, comprehensive damages, loss of income, medical expenses, statutory or common-law bad faith, extra-contractual damages, punitive damages, attorneys' fees, costs, and interest. (D.E. 50-2 at 2–3.) The settlement agreement also encompassed any claims arising from the handling of the Lehmans' insurance claim. (D.E. 50-2 at 3.) The settlement agreement identified the consideration as Philadelphia's payment of $50,001, but it did not allocate that amount among the various covered claims. (*See* D.E. 50-2 at 2–3.) The agreement further stated that payment was not to be construed as an admission of liability or confession of judgment on the part of the releasees. (D.E. 50-2 at 3.)

RLI sought and obtained leave from the district court to file the settlement agreement under seal, to preserve confidentiality. (D.E. 47; D.E. 49; D.E. 50.) Notably, the Lehmans opposed the filing of the settlement agreement. (D.E. 48 at 1.) They maintained that the "only remaining issue is the form and content of the Final Judgment to be entered," and that the release "simply has no relevance to the entry of a judgment at this time." (D.E. 48 at 2.)

## IX. RLI's Response to the District Court's Summary-Judgment/Show-Cause Order

On January 18, 2024, RLI filed its response to the district court's summary-judgment/show-cause order of January 4, 2024. (D.E. 52 at 1.) RLI explained that "before the Lehmans can qualify for Excess UM benefits under their RLI Umbrella Policy, Philadelphia must pay them $500,000 in UM benefits." (D.E. 52 at 1.) RLI further explained that, even assuming a $50,001 payment by Philadelphia sufficed to exhaust underlying UM coverage, the Lehmans could not establish that the Philadelphia payment counted entirely towards UM coverage, as the settlement agreement did not allocate its proceeds among covered claims. (D.E. 52 at 7–8.) RLI further argued that the record evidence did not show that Philadelphia actually accepted UM coverage for the accident,

and contrary to the RLI Policy's insuring requirements, the Lehmans failed to maintain underlying UM coverage for each auto they operated that followed them everywhere. (D.E. 52 at 9–13.) On these bases, RLI reiterated that it was entitled to summary judgment in its favor, and that the entry of summary judgment for the Lehmans was inappropriate. (D.E. 52 at 3, 13.)

## X. The District Court's Entry of Final Summary Judgment in Favor of the Lehmans

On January 29, 2024, the district court entered a final summary-judgment order against RLI and in favor of the Lehmans. (D.E. 54 at 1.) "As the Lehmans have now been paid $250,001 in primary underinsured motorist benefits from Mapfre and Philadelphia," the district court found, "the Lehmans eliminated RLI's basis for its disclaimer of coverage." (D.E. 54 at 2.) "Accordingly," the court concluded, "the Lehmans prevailed in this lawsuit and, pursuant to Rule 56(f)(1) of the Federal Rules of Civil Procedure, the Court will direct the Clerk to enter final judgment in their favor." (D.E. 54 at 2.) On January 30, 2024, the clerk issued a final judgment in favor of the Lehmans and against RLI. (D.E. 55 at 1.) RLI now appeals the district court's entry of final summary judgment in favor of the Lehmans.

**STATEMENT OF THE STANDARD OR SCOPE OF REVIEW**

Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An order granting summary judgment is reviewed *de novo*. *Stanley v. City of Sanford, Fla.*, 83 F.4th 1333, 1337 (11th Cir. 2023).

## SUMMARY OF THE ARGUMENT

The district court erred by denying summary judgment for RLI and instead entering summary judgment, *sua sponte*, for the Lehmans.

The RLI Policy required the Lehmans to exhaust the actual, aggregate limits of any underlying UM policies before excess UM coverage applied—not just $200,000 from one UM policy and $50,001 from another to reach the $250,000 minimum. There's no dispute that the Lehmans failed to collect the full, combined limits of their underlying policies—i.e., $700,000—and consequently, the RLI Policy's excess UM coverage was never triggered.

Even assuming, for argument's sake, that the Lehmans could satisfy the RLI Policy's exhaustion requirement by collecting only $250,000 in benefits in the manner they did, the Philadelphia settlement did not allocate its proceeds among the various UM and non-UM claims involved, so the Lehmans are unable to establish that the entire $50,001 Philadelphia settlement payment counted towards underlying UM coverage.

In addition, and contrary to the RLI Policy's insuring requirements, the Lehmans failed to maintain underlying UM coverage, for each auto,

that followed them everywhere. The Philadelphia Policy did not provide UM coverage to the Lehmans for injury in any vehicle that they owned or operated. Rather, it provided UM coverage for a "collector vehicle," which the Dodge Ram Lehman was driving at the time of the accident was not.

For all of these reasons, the district court's final summary judgment should be reversed, and the case should be remanded for entry of summary judgment in RLI's favor, or at least for further proceedings.

# ARGUMENT

## I. The District Court Erred by Entering Summary Judgment, *Sua Sponte*, in Favor of the Lehmans

### A. The Lehmans Aren't Entitled to UM Coverage Under the RLI Umbrella Policy, as They Failed to Exhaust the Limits of their Underlying Basic UM Policies

The district court erred by entering summary judgment for the Lehmans, finding they were entitled to excess coverage under the RLI Policy, as there's no genuine dispute that the Lehmans failed to exhaust the full limits of their underlying basic UM coverage.

An umbrella liability insurance policy "is designed only to come into play after the exhaustion of certain underlying insurance coverage." *Chicago Ins. Co. v. Dominguez*, 420 So. 2d 882, 884 (Fla. Dist. Ct. App. 1982); *accord United Educators Ins. v. Everest Indem. Ins. Co.*, 372 F. App'x 928, 931 (11th Cir. 2010) ("[E]xcess policies only activate after the exhaustion of primary policies."); *Publix Super Markets, Inc., v. Fireman's Fund Ins. Co.*, No. 8:22-CV-2569-CEH-AEP, 2023 WL 6049680, at *6 (M.D. Fla. Sept. 15, 2023) ("An insurer's obligations under an excess policy typically are not triggered unless coverage is exhausted under an underlying, or primary, policy.").

Furthermore, "liability under a secondary policy will not attach until all primary insurance is exhausted, even if the total amount of primary insurance exceeds the amount contemplated in the secondary policy." *Olympic Ins. Co. v. Emp'rs Surplus Lines Ins. Co.*, 178 Cal. Rptr. 908, 912 (Cal. Ct. App. 1981); *accord Emp'rs Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1221 (9th Cir. 2003); *O'Reilly Auto Enters., LLC v. U.S. Fire Ins. Co.*, No. 6:17-03007-CV-RK, 2020 WL 520129, at *5 (W.D. Mo. Jan. 31, 2020). As Couch explains:

> Where a settlement is within the primary limits, the excess insurer has no liability even where the excess policy was written to cover liability below the amount of the settlement. To illustrate, where there were two primary policies with an aggregate limit of $1.02 million, and the settlement amount was only $495,000, coverage under a secondary policy was not triggered, notwithstanding the fact that it had been written to cover liability in excess of $20,000.

15A Jordan R. Plitt, et al., *Couch on Insurance* § 220:39 (3d ed.) (citing *Olympic*, 178 Cal. Rptr. at 912).

Consistent with the foregoing authority and the RLI Policy language, the Lehmans failed to exhaust their underlying UM coverage in this case. The RLI Policy's Excess UM Endorsement required the Lehmans to maintain at least $250,000 in underlying UM coverage for

any "Automobile" they or their "Relatives" operated. (D.E. 1-1 at 2–3, 15.) It further stated that excess UM coverage would apply only if the "policy limits of any and all **Underlying Insurance** have been exhausted by payment of judgments or settlements." (D.E. 1-1 at 15.) In other words, for excess UM coverage to apply under the RLI Policy, the Lehmans had to exhaust the actual, aggregate limits of any and all of underlying UM policies—not just a combination of various policies to reach the $250,000 required minimum limits. *See* 15A Jordan R. Plitt, et al., *supra*, § 220:39. The Lehmans sought to establish exhaustion by using two primary auto policies: the Mapfre Policy and the Philadelphia Policy. The Mapfre Policy carried a total UM limit of $200,000, and the Philadelphia Policy carried a total UM limit of $500,000, for a combined aggregate of $700,000. (D.E. 6-1 at 23, 157.) Assuming, for the moment, that these two policies otherwise qualified as underlying basic policies, they would, in fact, satisfy the required minimum of $250,000—but the Lehmans would have to collect the combined total limits of $700,000 in order to exhaust them. The Lehmans collected $200,000 in UM benefits from Mapfre and allegedly collected an unallocated settlement payment of $50,001 from Philadelphia, for a total of only $250,001. (D.E. 31-1 at

61–62; D.E. 39-1 at 2.) That means they didn't collect enough underlying UM benefits to trigger excess coverage under the RLI Policy. To illustrate:



Because the Lehmans used the Philadelphia Policy as a qualifying underlying basic policy to reach the $250,000 minimum and overcome the fact they only purchased $200,000 for the Dodge Ram, they had to exhaust the entire $500,000 limit before the RLI Policy's Excess UM Endorsement would apply. The Lehmans couldn't have it both ways—i.e., using the Philadelphia Policy to satisfy their required $250,000

minimum limit of coverage for the Dodge Ram, but not exhausting that policy's actual $500,000 limit.

On these bases, the district court's exhaustion finding is erroneous, excess UM coverage was unavailable under RLI Policy, and the final summary judgment should be reversed.

**B.    The Lehmans' Settlement Agreement with Philadelphia Did Not Allocate the Settlement Payment Among Claims, so the Lehmans Cannot Show that Philadelphia's $50,001 Payment Was for UM Coverage**

Even assuming, for argument's sake, that the Lehmans could satisfy the RLI Policy's exhaustion requirement by collecting only $250,000 in underlying UM benefits, the Lehmans cannot establish that Philadelphia's $50,001 settlement payment was solely for UM coverage, as the settlement agreement with Philadelphia failed to allocate its proceeds among the various covered and settled claims, including the Lehmans' claim for attorney fees.

Where the availability of insurance coverage turns on an underlying settlement or judgment, the settlement or judgment must properly allocate among covered and non-covered claims. *Cf. Trovillion Constr. & Dev., Inc. v. Mid-Continent Cas. Co.*, No. 6:12-CV-914-ORL-37, 2014 WL 201678, at *8 (M.D. Fla. Jan. 17, 2014) ("Florida law requires

Trovillion, the party seeking recovery, to allocate the settlement amount between covered and uncovered claims. Inability to allocate precludes recovery." (citations omitted)).

Moreover, a party cannot unilaterally decide what a settlement payment covers when the allocation is not clear from the face of the settlement agreement. *Cf. Dionese v. City of W. Palm Beach*, 500 So. 2d 1347, 1348–51 (Fla. 1987); *Liberty Mut. Ins. Co. v. Wolfson*, 299 So. 3d 28, 33–34 (Fla. Dist. Ct. App. 2020). As the court explained in *Dionese*:

> Both existing case law and fairness to the parties involved require us to ignore a private unilateral apportionment of settlement proceeds among plaintiffs, when the settlement agreement itself fails to apportion the proceeds among the plaintiffs.
>     . . . .
> . . . [A]n agreement to apportion the proceeds of a settlement agreement must be found on the face of the settlement agreement and agreed to by all of the parties involved in the settlement.

500 So. 2d at 1348, 1351.

Here, the Lehmans executed a settlement agreement and release in favor of Philadelphia, as well as insurance agent Grundy Worldwide. (D.E. 50-2 at 1, 2, 7, 8.) The release encompassed, among other things, claims for Personal Injury Protection (PIP) benefits, medical payments

coverage, bad faith, attorneys' fees, negligent procurement of the insurance policy, and UM. (D.E. 50-2 at 2–3.) But the settlement agreement didn't allocate the $50,001 payment among those various claims. (*See* D.E. 50-2 at 2–3.) If as little as $1.01 was intended to cover any non-UM claims, then UM coverage necessarily accounted for less than $50,000 of the settlement payment. Because the settlement was undifferentiated on its face, the Lehmans cannot establish that the $50,001 settlement payment was actually for UM benefits and counted toward their required minimum limit of underlying UM coverage. To the extent the Lehmans now attempt to unilaterally and retroactively allocate the settlement payment entirely for UM, any such attempt is improper and ineffective. *Cf. Dionese*, 500 So. 2d at 1348, 1350–51; *Wolfson*, 299 So. 3d at 33–34.

In addition, the record evidence does not show that Philadelphia actually accepted UM coverage for the accident. The Lehmans' settlement agreement stated that payment was not to be construed as an admission of liability or confession of judgment by the releasees. (D.E. 50-2 at 3.) And Lehman's summary-judgment affidavit claiming that Philadelphia "reversed its coverage position" does not establish that

Philadelphia accepted coverage under its policy, as opposed to entering into a nuisance-value settlement while continuing to deny coverage and memorializing its non-admission of coverage in the settlement agreement itself.

Philadelphia's agreement to pay a mere tenth of its UM limit in exchange for dismissal of the Lehmans' claim doesn't legally equate with Philadelphia's acceptance of UM coverage. And if Philadelphia didn't accept UM coverage, then the $50,001 payment wouldn't represent UM benefits, and the payment would be meaningless for purposes of triggering coverage under the RLI Policy.

On these additional bases, the district court erred by entering summary judgment in favor of the Lehmans, and the final summary judgment should be reversed.

## C. The Lehmans Failed to Maintain the Required Underlying UM Coverage, for Each Auto they Operated, that Followed Them Everywhere

Next, contrary to the RLI Policy's insuring requirements, the Lehmans failed to maintain minimum required amount of underlying UM coverage, for each auto they operated, that followed them everywhere. The Lehmans purchased from Mapfre only $100,000 in UM

coverage for the Dodge Ram Lehman was driving, which was stacked with the $100,000 they purchased on another vehicle insured under the Mapfre Policy, for a total of $200,000.

The RLI Policy's Declarations stated: "It is agreed by you that you and any Relative will be covered by an Automobile liability policy for any Automobile you operate or your Relative operates for at least the minimum limits listed below. . . ." (D.E. 1-1 at 3).

Meanwhile, the Lehmans' Philadelphia Policy stated:

A.  It is agreed and understood that the definition of ["]Your covered auto" is deleted and replaced by the following:

"Your covered auto" means:
1.  Any "collector vehicle" shown in the Declarations.
2.  Any "newly acquired auto" that meets the definition of a "collector vehicle".

B.  It is agreed and understood that the following definition is added to the policy:

"Collector vehicle" means a private passenger auto or motorcycle that:
1.  Is maintained solely for use in exhibitions, parades, club activities, or other functions of public interest.
2.  Is not used for regular driving to work, school, errands, shopping, general transportation, secondary or back-up transportation, business or commercial

> purposes, except for limited pleasure
> use.

(D.E. 6-1 at 40.)

Under the RLI Policy, Lehman agreed to procure a primary UM policy with the required minimum limit that would cover him in any vehicle he operated. He failed to do so. The Philadelphia Policy was a collector vehicle policy that did not provide UM coverage to the Lehmans for injury in any vehicle that they owned or operated, including the Dodge Ram Lehman was driving at the time of the accident. Rather, it covered only the collector vehicle listed on that policy.

On this additional basis, the Lehmans failed to maintain the underlying basic minimum limit of coverage required by the RLI Policy, the district court erred by entering summary judgment in favor of them, and the final summary judgment should be reversed.

# CONCLUSION

Appellant, RLI Insurance Company, respectfully requests that this Court reverse the district court's summary judgment and remand either for entry of summary judgment in RLI's favor, or for further proceedings.

BUTLER WEIHMULLER KATZ
CRAIG LLP

/s/ Adam M. Topel
FAY E. RYAN, ESQ.
Florida Bar No. 0965944
fryan@butler.legal
ADAM M. TOPEL, ESQ.
Florida Bar No. 113916
atopel@butler.legal
Secondary: rburnison@butler.legal
400 North Ashley Drive
Suite 2300
Tampa, Florida 33602
Telephone: (813) 281-1900
Facsimile: (813) 281-0900
*Counsel for Appellant,*
*RLI Insurance Company*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word and page limits of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding all parts of the document exempted by Rule 32(f), this document contains 4,340 words. This document complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6), because it was prepared in proportionally spaced typeface and size 14 font using Microsoft Word.

/s/ Adam M. Topel
ADAM M. TOPEL, ESQ.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all counsel of record on June 24, 2024, via the CM/ECF system.

/s/ Adam M. Topel
ADAM M. TOPEL, ESQ.